**Mark VAN EATON, Appellant–Plaintiff,**

v.

**Donna FINK, Appellee–Defendant.**

No. 53A05–9708–CV–335.

Court of Appeals of Indiana.

July 24, 1998.

Rehearing Denied Nov. 5, 1998.

Walter E. Bravard, Jr., Indianapolis, for Appellant–Plaintiff.

Richard R. Skiles, Janet M. Prather, Skiles & Cook, Indianapolis, for Appellee–Defendant.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Mark Van Eaton ("Van Eaton") filed a Complaint for Damages for Defamation against Donna Fink ("Fink"). Fink filed her Answer and asserted the affirmative defense of privilege. Fink later filed a motion for judgment on the pleadings. Because Van Eaton attached additional materials outside the pleadings to his Response to Defendant's Motion to Dismiss, the motion was converted to a motion for summary judgment pursuant to Trial Rule 12(C). On March 10, 1997, the trial court denied Fink's motion.

Fink subsequently filed a motion to reconsider denial of summary judgment alleging that Van Eaton's supporting affidavits were not properly designated and, thus, not properly considered by the court. The court then reversed its earlier decision and granted Fink's motion for summary judgment. Van Eaton now appeals. The question presented is whether the trial court erred when it granted Fink's Motion for Summary Judgment.

We affirm.

### FACTS

This suit arises from statements made by Fink in connection with another case, *Kirchoff v. Selby*, 686 N.E.2d 121 (Ind.Ct.App. 1997), *reh'g. denied.* Fink worked as a legal assistant for attorney Dean Richards, who represented the Selbys. Attorney Patrick Shoulders represented the Kirchoffs. A jury awarded the Selbys $730,000.00. Before the trial court entered judgment on the verdict, Fink informed Shoulders that she had manufactured an exhibit on behalf of the Selbys, at Richards' request, in order to rehabilitate Van Eaton's testimony.[1] She also stated that Van Eaton had testified falsely when he claimed, on rebuttal, that he had made notes

---

1. Both Exhibits are called "Confidential Bank Sale Prospectus," and Fink claims that she manufactured Exhibit 12 by deleting pages from Exhibit 10.

regarding the differences between Exhibit 10 and Exhibit 12 prior to trial. In addition, Fink claimed that she had assisted Richards in the fabrication of Exhibit 61, a Stock Exchange and Subscription Agreement. After her sworn statement was taken before a notary, Fink sent a copy via facsimile to Richards.

The Kirchoffs then filed a motion to correct error based on newly discovered evidence. *Kirchoff*, 686 N.E.2d at 122. The trial court granted the Kirchoffs' motion and ordered a new trial. *Id.* Cross appeals were filed, and we affirmed the trial court's judgment. *Id.* at 133. We subsequently issued an opinion in which we denied the parties' petitions for rehearing, and the case is now pending before our supreme court. *See Kirchoff v. Selby*, 688 N.E.2d 1284 (Ind.Ct.App. 1997), *trans. pending.*

On the same day the Kirchoffs filed their motion to correct error, Van Eaton filed this defamation suit against Fink. Fink responded that her statements were privileged and filed a motion for judgment on the pleadings. After Van Eaton attached thirteen affidavits to his response, Fink's motion was converted to a motion for summary judgment pursuant to Trial Rule 12(C). The trial court determined that the affidavits designated by Van Eaton had demonstrated a genuine issue of material fact which precluded the grant of summary judgment. Shortly thereafter, Fink filed a motion to reconsider and alleged that the affidavits had been improperly designated and, thus, were not properly considered by the trial court. The court agreed and granted Fink's motion for summary judgment.

### DISCUSSION AND DECISION

#### Standard of Review

If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. Ind. Trial Rule 12(C). Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The burden is on the moving party to prove there are no genuine issues of material fact and he is entitled to judgment as a matter of law. *Konkle v. Henson,* 672 N.E.2d 450, 454 (Ind. Ct.App.1996). Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Beiger Heritage Corp. v. Kilbey,* 676 N.E.2d 784, 785 (Ind.Ct.App.1997). At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. T.R. 56(C).

When reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh the evidence but will consider the facts in the light most favorable to the nonmoving party. *Beiger,* 676 N.E.2d at 785–86. We may sustain a summary judgment upon any theory supported by the designated materials. *Squires v. Utility/Trailers of Indianapolis, Inc.,* 686 N.E.2d 416, 420 (Ind.Ct.App.1997).

#### I. Designation of Evidence

Van Eaton contends that summary judgment was inappropriate because the trial court erred when it determined that he had not designated materials in accordance with Indiana Trial Rule 56(C). We cannot agree.

Indiana Trial Rule 56(C) does not mandate the manner in which a party is to specifically designate material. *National Bd. of Examiners for Osteopathic Physicians and Surgeons, Inc. v. American Osteopathic Ass'n,* 645 N.E.2d 608, 615 (Ind.Ct. App.1994). Provided that the trial court is apprised of the specific material upon which the parties rely in opposition to a motion for summary judgment, the material may be considered. *Id.* Whether the parties designate material to the court in a separate filing, or in a brief in opposition to the motion, is within their discretion. *Id.* To comply with the designation requirement, a party may designate an affidavit either by providing specific page numbers and paragraph citations, or by specifically referring to the sub-

stantive assertions relied upon. *Abbott v. Bates,* 670 N.E.2d 916, 922 (Ind.Ct.App.1996) (citations omitted). However, the designation of pleadings, discovery material and affidavits in their entirety fails to meet the specificity requirement of T.R. 56. *Plummer v. Board of Comm'rs of St. Joseph County,* 653 N.E.2d 519, 521–522 (Ind.Ct.App.1995), *trans. denied.*

Here, Van Eaton designated thirteen affidavits, consisting of some fifty-five pages, in their entirety. He did not provide specific page numbers and paragraph citations. However, in paragraph 10 of his response, Van Eaton directs the court to specific language contained in the one-paragraph supplemental affidavit of Richards to support his claim. Thus, for the purposes of summary judgment, Van Eaton has properly designated only that portion of the record referred to in paragraph 10 of his response.

## II. Defamation

Next, Van Eaton contends that the trial court erred when it granted summary judgment in favor of Fink because the properly designated portion of Richards' supplemental affidavit creates a genuine issue of material fact as to whether Fink's statements were privileged. We disagree.

To maintain an action for defamation, a plaintiff must show a communication with four elements: (1) defamatory imputation; (2) malice; (3) publication; and (4) damages. *Schrader v. Eli Lilly and Co.,* 639 N.E.2d 258, 261 (Ind.1994). A statement is defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. *Furno v. Citizens Ins. Co. of America,* 590 N.E.2d 1137, 1141 (Ind.Ct.App.1992), *trans. denied.* Publication, in defamation law, can consist of communication to just one individual. *Doe v. Methodist Hospital,* 690 N.E.2d 681, 692 (Ind.1997) (citing RESTATEMENT (SECOND) OF TORTS § 577(1) (1977)). Generally, each individual publication is a separate defamation. *Weenig v. Wood,* 169 Ind.App. 413, 430 n. 2, 349 N.E.2d 235, 246 n. 2 (1976). However, not all defamation is actionable. *Trotter v. Indiana Waste Systems, Inc.,* 632

N.E.2d 1159, 1162 (Ind.Ct.App.1994). The law of libel and slander recognizes two classes of privileged communication, absolute and qualified. *Id.*

Here, the parties do not dispute that Fink's statement, in which she accused Van Eaton of perjury, is defamatory if proven to be false. The parties also do not dispute that Fink published the statement when she gave it to Shoulders and, again, when she sent it via facsimile to Richards. However, Fink contends that her defamatory statements are entitled to either absolute or qualified privilege. We address each claim in turn.

### A. Absolute Privilege

Indiana law affords absolute privilege to statements made in the course of a judicial proceeding. *Chrysler Motors Corp. v. Graham,* 631 N.E.2d 7, 9 (Ind.Ct.App. 1994), *trans. denied.* Absolute privilege, however, is abrogated when the statements are not relevant and pertinent to the litigation or do not bear some relation thereto. *Id.* Whether a particular communication is relevant and pertinent to the litigation is purely a legal determination for the court. *Id.*

Absolute privilege is based on the idea that:

> [P]ublic interest in the freedom of expression by participants in judicial proceedings, uninhibited by the risk of resultant suits for defamation, is so vital and necessary to the integrity of our judicial system that it must be made paramount to the right of the individual to a legal remedy when he has been wronged.

*Briggs v. Clinton County Bank & Trust Co.,* 452 N.E.2d 989, 997 (Ind.Ct.App.1983), *trans. denied.* Absolute privilege provides judges, attorneys, parties and witnesses, in connection with a judicial proceeding, immunity from liability even if they publish defamatory material with an improper motive. *AAFCO Heating and Air Conditioning, Co. v. Northwest Publications, Inc.,* 162 Ind.App. 671, 674, 321 N.E.2d 580, 583 (1974) (citing *Griffith v. Slinkard,* 146 Ind. 117, 123, 44 N.E. 1001, 1002 (1896)), *cert. denied* 424 U.S. 913, 96 S.Ct. 1112, 47 L.Ed.2d. 318 (1976).

A witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as part of a judicial proceeding in which he is testifying if it has some relation to the proceeding. RESTATEMENT (SECOND) OF TORTS § 588; *see also Briggs*, 452 N.E.2d at 997. This rule applies to communications preliminary to a proposed judicial proceeding where the communication has some relation to a proceeding that is reasonably contemplated in good faith and under serious consideration by the witness or a possible party to the proceeding. RESTATEMENT (SECOND) OF TORTS § 588 cmt. e. We hold that the rule also applies to communications subsequent to a judicial proceeding, provided, that the communication is related to the proceeding, made in good faith and in contemplation of further proceedings before the trial court or on appeal.

Here, although the *Kirchoff v. Selby* trial had ended, the trial court's judgment was not yet final. Fink's statement to Shoulders, which contained allegations that she had falsified a document at the direction of Richards during trial and that Van Eaton had lied regarding the falsified document during cross-examination, was made in contemplation that the Kirchoffs would request a new trial based on that information. Thus, Fink's statement to Shoulders is entitled to absolute privilege.

### B. Qualified Privilege

Fink concedes that the separate defamation that occurred when she subsequently published the statement via facsimile to Richards is not entitled to absolute privilege. Instead, she maintains that qualified privilege applies.

The doctrine of qualified privilege protects "communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty." *Schrader*, 639 N.E.2d at 262. Absent a factual dispute, whether the qualified privilege doctrine protects a statement is a question of law. *Con-*

*well v. Beatty*, 667 N.E.2d 768, 779 (Ind.Ct. App.1996).

The defendant has the burden to establish the existence of a privileged occasion for the publication by proof of a recognized public or private interest which would justify the utterance of the words. *Id.* Once the existence of the privilege is established, the burden shifts to the plaintiff to prove that the defendant abused the privilege. *Id.* Abuse is shown when: (1) the communicator was primarily motivated by ill will in making the statement; (2) there was excessive publication of the defamatory statements; or (3) the statement was made without belief or grounds for belief in its truth. *Schrader*, 639 N.E.2d at 262.

Here, as Richard's legal assistant, Fink was required to conform to the same standards as a lawyer. *See* Rules of Professional Conduct, Guideline 9.10(j) (legal assistant shall be governed by American Bar Association Model Code of Professional Responsibility and American Bar Association Model Rules of Professional Conduct). A lawyer shall not unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. Ind. Professional Conduct Rule 3.4. A lawyer shall not counsel or assist another person to do any such act. *Id.* A lawyer shall not knowingly make a false statement of material fact to a tribunal or offer evidence the lawyer knows to be false. Ind. Professional Conduct Rule 3.3(a)(1) and (2). Fink's statement contained allegations that she and Richards had falsified evidence presented to the court at the trial. Assuming that Fink and Richards had engaged in the conduct described by Fink, Fink and Richards would have corresponding legal, moral and social duties to correct the injustice that resulted from their behavior. *See Trotter v. Nelson*, 657 N.E.2d 426, 428 (Ind. Ct.App.1995) (Rules of Professional Conduct serve as proper standard for legal profession and specifically operate as rules of law in disciplinary proceedings before the Supreme Court). Thus, Fink's publication via

facsimile to Richards was entitled to qualified privilege.

Still, Van Eaton contends that Fink abused her qualified privilege because her statement was primarily motivated by ill will and without belief in its truth. In support of his contention, Van Eaton directs us to the one-paragraph supplemental affidavit of Richards and claims that it demonstrates that Fink made her statements in an attempt to extort money from the Selbys. The affidavit states:

> That during the argument [Richards] had with Donna Fink before [he] ordered her from [his] home on September 4, 1995, on Labor Day evening, one of the things that she stated that she was going to do to Dick Gaib and [Richards] was accuse [them] of raping her and further accuse [them] of manufacturing documents. She named numerous documents to [Richards] that she felt could have been manufactured by [Richards]. During the argument, before she left, she did state to [Richards] some of the documents that she was going to state were manufactured, were Exhibit "12" the Confidential Sales Prospectus, and Exhibit "61," the Stock Exchange Agreement. She mentioned numerous other documents that were admitted at the trial. She stated that Mark Van Eaton, Jeff and Diane Selby, [Richards] and Richard Gaib and Jerry Stillwell would be in serious trouble.

Van Eaton mischaracterizes the supplemental affidavit. Although the affidavit shows that Fink was upset with Richards, it does not demonstrate that she attempted to extort money from anyone. Further, we cannot infer from the affidavit that Fink's statement was motivated by "ill will" or that she did not believe in the truth of her statements. Rather the supplemental affidavit indicates that she believed that documents were manufactured. Because Van Eaton has failed to designate material which could establish that Fink abused her qualified privilege, we conclude that the trial court properly granted summary judgment in favor of Fink.

Affirmed.

BAILEY and RILEY, JJ., concur.