**James J. DAHER, Jr., Petitioner–Appellant,**

v.

**John VANNATTA,\* Respondent–Appellee.**

No. 03–4359.

United States Court of Appeals, Seventh Circuit.

\* John VanNatta has replaced Stanley Knight as Superintendent of the Miami Correctional Fa-

Submitted Dec. 10, 2004.**

Decided Dec. 10, 2004.

James J. Daher, Jr., Miami Correctional Facility, Bunker Hill, IN, pro se.

Steve Carter, Office of the Attorney General, Indianapolis, IN, for Respondent–Appellee.

Before POSNER, KANNE, and SYKES, Circuit Judges.

cility.  Accordingly, we have substituted Van-Natta as the appellee pursuant to Fed. R.App. P. 43(b).

** After an examination of the briefs and the record, we have concluded that oral argument is unnecessary.  Thus, the appeal is submitted on the briefs and the record.  *See* Fed. R.App. P. 34(a)(2).

## ORDER

Indiana prisoner James Daher petitioned under 28 U.S.C. § 2254 seeking relief from his disciplinary conviction for intimidation. This conviction led to revocation of 180 days of earned credit time and a demotion in credit-earning class. The district court denied Daher's petition and we affirm.

Daher was charged with intimidation based on a letter he sent to Red Gold Inc., a food products company that had employed prison inmates in the past. In this letter Daher threatened to contact the news media with information that sick inmates tampered with Red Gold food products. In pertinent part, the letter states:

> The public, imagining metal shavings in vegetables; picturing prisoners urinating and spitting in the green beans; even if not true, would stay away from Red Gold in droves.... None of this is necessary, however. Likely all of this unpleasantness is avoidable. If perhaps one of your legal representatives ... could come to see me, I am quite sure that all parties can be both protected and satisfied.

Red Gold initiated a meeting with Daher because of the seriousness of his allegations, and ultimately contacted the Food and Drug Administration. The FDA investigated and concluded that Daher was attempting to extort money from Red Gold, after which the agency allowed the incident to be handled administratively by prison officials. An internal affairs officer then prepared a report reaching the same conclusion as the FDA about Daher's motive for the letter. Daher pleaded not guilty to the intimidation charge and denied trying to extort Red Gold, but a Conduct Adjustment Board found him guilty, revoking 180 days earned credit time and demoting him one credit-earning class.

Indiana prisoners have a protected liberty interest in earned good-time credits and credit-earning class, and therefore are entitled to due process before losing either. *Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir.2003). Due process requires that in prison disciplinary hearings inmates be afforded written notice of the charge at least twenty-four hours before the hearing; the opportunity to present testimony and documentary evidence to an impartial decision-maker; and a written statement that explains the disciplinary action and is supported by "some evidence" in the record. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); *Wolff v. McDonnell*, 418 U.S. 539, 564–66, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1985); *Cotton*, 344 F.3d at 677.

As he argued before the district court, Daher contends on appeal that the evidence supporting his conviction is insufficient to sustain the CAB's finding. "Intimidation" is defined as communicating a threat with the intent that the recipient engage in conduct against his will, Ind. Code. § 35–45–2–1(a)(1), while "threat" is defined to include expressions, by words or action, of an intention to falsely harm the credit or business reputation of the person threatened, Ind.Code § 35–45–2–1(c)(7). Here, the CAB relied on the investigative report prepared by the internal affairs officer, on Daher's initial letter to Red Gold and the correspondence between him and the company when Red Gold investigated his allegation, and on Daher's explanation to the CAB for his letter. All of this constituted more than "some evidence" that Daher had threatened to damage Red Gold's business reputation by disseminating false information unless Red Gold would pay him off.

Daher also renews his contention that the CAB violated his due process rights by not notifying him at least 24 hours prior to his hearing that he would

be forced to defend against an extortion charge. According to Daher, the CAB "modified" the intimidation charge during the hearing by characterizing his act as "extortion" rather than "intimidation." Daher's belief is based on the CAB's stated reason for its decision: Daher "clearly had intention to intimidate and CAB believes extortion was ultimate goal." Daher says he was blindsided because he was not prepared to defend against an extortion charge. His contention is frivolous. Indiana does not have a criminal statute that specifically punishes "extortion," but the term is commonly used to refer to intimidating conduct. *See Castor v. State,* 754 N.E.2d 506, 507 (Ind.2001); *Van Eaton v. Fink,* 697 N.E.2d 490, 496 (Ind.Ct. App.1998); *Allread v. State,* 582 N.E.2d 899, 900 (Ind.Ct.App.1991). But even if extortion and intimidation were technically separate crimes, where an intimidation charge is established with proof that a threat to disseminate false information about a business was made with the implicit intent to coerce payment from the company—as was the case here—extortion is obviously proved as well. *See* Blacks Law Dictionary (8th Ed.) (extort includes "to exact wrongfully by threat or intimidation"). And because Daher was informed of the facts underlying this intimidation theory well in advance of his hearing, he received ample notice of the charge he must defend against, no matter whether labeled as intimidation or extortion. *See Northern v. Hanks,* 326 F.3d 909, 911 (7th Cir.2003).

■ Daher likewise renews his argument that he did not receive an impartial hearing because, he claims, his lay advocate witnessed the CAB members arguing over "what amount of sanctions would be applied" before the hearing even started, and thus the outcome was predetermined. The state responds that even if this incident occurred, and even if the prehearing discussion amounted to a due process violation, the conduct was harmless because it does not cast grave doubt on the verdict. But the state offers no authority for its position that allowing a biased tribunal to preside over a prison discipline hearing can be harmless error, and we have found none. *Cf. Oswald v. Bertrand,* 374 F.3d 475, 482 (7th Cir.2004) (explaining in context of criminal case that right to be tried by impartial tribunal is not subject to harmless error analysis); *Giano v. Sullivan,* 709 F.Supp. 1209, 1217–18 (S.D.N.Y. 1989) (holding that prisoner's right to impartial decision-maker at disciplinary hearing is not subject to harmless error analysis). We do not have to decide that question, however, because we conclude that the facts Daher alleges, even if true, would not establish a violation of his due process right to an impartial hearing. Although Daher assumes that any discussion by the CAB members before he arrived in the room must be viewed as evidence that the CAB had a preconceived notion as to his guilt, he does not allege that the CAB members failed to give him a full opportunity to present his case or to listen carefully to his presentation. Nor does he allege that the CAB did not consider his evidence before reaching a verdict; indeed, the CAB's statement of reasons for its finding of guilt identifies Daher's statement as part of the evidence it considered. *See Pannell v. McBride,* 306 F.3d 499, 502 (7th Cir.2002) (allegation of partiality failed to demonstrate bias); *Cotton,* 342 F.3d at 666–67 (CAB entitled to presumption of honesty and integrity). Accordingly, the district court appropriately rejected this claim without an evidentiary hearing.

■ Last, Daher again presses his frivolous contentions that he was punished multiple times for the same offense because he suffered both the loss of good time and a reduction in credit-earning class, and that these sanctions are not allowed by Indiana

law. Intimidation is a Class B offense, for which the maximum authorized punishment is any combination of the following: six months' loss of good time, a one-grade reduction in credit-earning class, six months' disciplinary segregation, three months' loss of various privileges, and 20 hours of extra work. Ind. Dep't of Corr. Disciplinary Code for Adult Offenders, 02–04–101 at 24 (2004). Daher's punishment was within these constraints.

What is left are two arguments that Daher presents for the first time on appeal. Daher claims that the CAB chairman was not impartial because he allowed prison administrators to exert undue influence over him. This contention rests on Daher's belief that the chairman is beholden to his superiors because they did not fire him in 1996 when—according to Daher—the chairman was caught having sex with an inmate. Daher also claims that the intimidation charge was motivated by the investigating officer's desire to retaliate against Daher for previously reporting to administrators that one of the officer's relatives working in the prison had beat and choked to death a handcuffed inmate. Because Daher did not raise these claims before the district court or in his administrative appeals, they are not properly before us, *Carr v. O'Leary,* 167 F.3d 1124, 1126 (7th Cir.1999), and indeed probably are procedurally defaulted, *Moffat v. Broyles,* 288 F.3d 978, 981–82 (7th Cir. 2002).

AFFIRMED.